PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEANNE SOBIE, | ) | |
| | ) | CASE NO.  5:24CV1866 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| TPC WIRE AND CABLE CORP., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 12] |

Pending is Defendant TPC Wire and Cable Corp.'s Motion for Summary Judgment (ECF No. 12).  Defendant moves the Court to enter summary judgment in its favor on all claims raised by Plaintiff Jeanne Sobie.  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons that follow, the Court grants summary judgment to Defendant.

## I. Background

### A.

The Court requires a party to submit a written request for judgment or to be dismissed to opposing counsel before a party may file a dispositive motion.  Opposing counsel shall either agree to the judgment or request for dismissal or shall give explicit reasons in writing for refusing to do so.  Upon such refusal, the party shall reassess its position and may file a dispositive motion if the party believes it is still entitled to summary judgment or dismissal.  The dispositive motion must be accompanied by a statement certifying that this exchange has occurred.  *See* Case Management Plan (ECF No. 9) at PageID #: 71, ¶ 15.  Defendant did not

(5:24CV1866)

submit the required certification.  The Court also notes that the Case Management Plan provides,

in pertinent part:

> Lead counsel of record shall confer with one another in person in order to prepare written stipulations as to all uncontested facts to be presented by the dispositive motion.  The stipulations shall be filed with the Court on or before July 30, 2025.  If there are no stipulations, a joint notice stating same shall be filed by the same date.  These are mandatory requirements.

ECF No. 9 at PageID #: 71, ¶ 15.  No stipulations or joint notice, however, were filed.

**B.**

Plaintiff began working for Defendant in June 2022 as a Customer Service Representative

and subsequently as a Sales Support Representative ("SSR").  On December 17, 2023, Plaintiff

received a breast cancer diagnosis and informed  Brittany Jones, Defendant's Human Resources

("HR") Manager, that she would need time off from work for an outpatient procedure.  *See*

Deposition of Jeanne M. Sobie (ECF No. 13) at PageID #: 148:5 - 149:6; Email dated Jan. 4,

2024 (ECF No. 13-1 at PageID #: 256) ("Currently I do not want to share this information with

Andrea [Chisnell (Plaintiff's direct supervisor)] or anyone else in my department, but I did want

to make you aware.").  Thereafter, Jones sent Plaintiff FMLA paperwork.  *See* Email dated Jan.

4, 2024 (ECF No. 13-1 at PageID #: 258).  On January 18, 2024, Plaintiff sent an email to Jones

that provides, in relevant part:  "I met with the surgeon and surgery is scheduled for 1/31 (only

because they had a cancellation, otherwise it would be the beginning of March - yikes).  It is

outpatient (how things have changed lol) so I am only anticipating 1/31 and 2/1 off from work,

possibly work from home on 2/2.  Back in office on Monday 2/5.  I have plenty of PTO so not a

problem. . . .  ECF No. 13-1 at PageID #: 260.

2

(5:24CV1866)

Kathleen ("Kathy") Caric is the Director of Product Supply and Commercial Support for Defendant.  *See* Deposition of Kathleen Caric (ECF No. 17) at PageID #: 505:9-11.  Caric learned at an out-of-town sales conference in late January 2024 that Plaintiff had a "medical issue."  *See* ECF No. 17 at PageID #: 510:13 - 512:9.  Caric, however, did not learn Plaintiff had been diagnosed with breast cancer until after the within lawsuit was filed.  *See* ECF No. 17 at PageID #: 504:22-25.

Plaintiff provided her doctor with the FMLA leave paperwork that Defendant had provided to her.  She learned that a different doctor, other than the surgeon, would need to complete the FMLA certification, which was the doctor to whom Plaintiff had originally provided the FMLA paperwork.  Plaintiff informed Defendant that a different doctor would need to complete the FMLA paperwork, which would result in a slight delay in her returning it, but that she would have it completed in March 2024 during her next appointment with her oncologist.  While Plaintiff did not return her FMLA paperwork before the termination of her employment, Jones knew that she would be returning it.  *See* Email dated Jan. 18, 2024 (ECF No. 13-1 at PageID #: 260) ("Also, the surgeon stated they do not fill out the FMLA docs – that would be done by the oncologist, and it sounded like I wouldn't see them for a few weeks after surgery [which was scheduled for January 31, 2024], so not sure how all that works.").  Plaintiff testified during cross-examination at her deposition that Jones told her to return the FMLA paperwork after Plaintiff had visited with her oncologist:

> Q.     Did you understand that there was a deadline to complete the FMLA paperwork?
> A.     Initially, yes.
> Q.     Did that change?
> A.     Verbally.

(5:24CV1866)

> Q.      What do you mean?
> A.      Means I informed Brittany that I couldn't get the -- meet that deadline because I wouldn't even be seeing the appropriate physician that needed to fill the document out until that expired.  And I informed her of that.
> *  *  *
> Q.      What do you recall Ms. Jones told you in response?
> A.      She said that she would reissue the FMLA paperwork if she had to but just to go ahead and get the oncologist to fill it out when I could.

ECF No. 13 at PageID #: 157:21 - 158:6; 158:18-23; *see also* Email dated Jan. 18, 2024 (ECF No. 16-1 at PageID #: 485).

Defendant was acquired by Amphenol in November 2023.  *See* Declaration of Amanda Kollman (ECF No. 12-2) at PageID #: 105, ¶ 3.  In late January 2024, a directive came from Todd Spaulding, Defendant's General Manager, for his reports to decrease selling, general, and administrative ("SG&A") expenses by 10%.  *See* Deposition of Amanda Kollman (ECF No. 14) at PageID #: 304:4-12 ("There was an e-mail . . . dated around late January from Todd Spaulding to his . . . reports indicating that business is slow . . . and to come up with ideas around 10 percent SG&A savings.").  "As part of [Defendant]'s post-acquisition realignment and cost-reduction efforts, the company implemented an enterprise-wide reduction in force ("RIF") in early 2024. . . ."  ECF No. 12-2 at PageID #: 105, ¶ 4.

Defendant terminated eight (8) employees, including Plaintiff and Kevin Armwood, as part of the RIF.  *See* ECF No. 12-2 at PageID #: 105, ¶ 5; ECF No. 14 at PageID #: 289:4-8; PageID #: 10-15 (citing Email dated Feb. 9, 2024 (ECF No. 14-1 at PageID #: 333)); Deposition of Brittany Jones (ECF No. 16) at PageID #: 458:1-4 (citing Email dated Feb. 19, 2024 (ECF No. 16-1 at PageID #: 488)).  Armwood served as the Sales Operations Business Partner for Defendant's Northwest territory.  He was under the age of 40 at the time of his separation.  *See*

(5:24CV1866)

ECF No. 12-2 at PageID #: 105, ¶ 6.  There were four (4) SSRs working for Defendant when the Northwest territory (Plaintiff was working in) was dissolved and her employment was terminated by Defendant.  The three (3) remaining SSRs, Cindy Skipper, Leslie Oddo, and Susan Hare, were reassigned to do the work remaining.  *See* ECF No. 12-2 at PageID #: 106, ¶ 8; ECF No. 14 at PageID #: 289:4-21.

Caric's participation in the decision to terminate Plaintiff's employment occurred on February 2, 2024, after she had learned that Plaintiff had a medical issue.  *See* ECF No. 17 at PageID #: 524:5 - 526:25; ECF No. 14 at PageID #: 300:3-8; PageID #: 304:14-25.  Caric had an additional meeting in Boston in late February 2024, during which the termination of Plaintiff's employment was discussed with numerous members of Defendant's leadership team.  *See* ECF No. 14 at PageID #: 300:25 - 302:16.

Kollman, currently Global Controller and Director of HR for Defendant, emailed Jones before the Boston meeting regarding the decision to terminate Plaintiff's employment.  *See* ECF No. 14 at PageID #: 286:1-2; PageID #: 302:8-16; ECF No. 12-2 at PageID #: 105, ¶ 3.  On February 19, 2024, Kollman emailed Jones:  "There are 6 terminations being planned for termination.  Please run demographic information as you suggested.  I think the leadership team should meet back up to finalize coordination/timing of the RIF thereafter."  ECF No. 14-1 at PageID #: 334-35.  Jones responded to Kollman via email on February 26, 2024:  "For Jeanne [Sobie] and Susan [Hare], are your notes below to say that they would be termed at the end of Q2?"  ECF No. 14-1 at PageID #: 334. Kollman replied in an email to Jones:  "Jeanne [Sobie] was TBD – Kathy was flexible with date.  Susan [Hare] the same.  I think the leadership team

(5:24CV1866)

should meet again to coordinate timing.  ECF No. 14-1 at PageID #: 334.  Thus, the timing of Plaintiff's role elimination was finalized on February 26, 2024.

On February 29, 2024, Kollman emailed Caric seeking confirmation of the justification for terminating Plaintiff's employment.  Kollman noted, "From what I absorbed, this action is based on a territory we removed so therefore the position is no longer need[ed] to support this retired territory."  *See* Email (ECF No. 17-1 at PageID #: 573) (brackets added).  Caric replied the following day, confirming, "with the elimination/retirement of the Northwest sales territory we no longer need an SSR to support it."  ECF No. 17-1 at PageID #: 572.

Jones testified as follows during cross-examination at her deposition:

> Q.      . . . Do you recall whether you were involved in any conversations about Ms. Sobie's being -- Ms. Sobie's employment being terminated versus somebody else in her position's employment being terminated?
> A.      I recall that when I was initially brought into the conversation, it was a consideration of I think everyone in the position.  Like, we were looking at the demographics of people in those positions.  *I wasn't a part of like the initial conversation of how that became*, but I recall having a conversation about looking at everyone in the position that held that same title.

ECF No. 16 at PageID #: 452:15 - 453:3 (emphasis added).

> Q.      . . . Did you have conversations with either Andrea Chisnell or Kathy Caric before  -- regarding the termination of Ms. Sobie's employment before the termination of her employment?
> A.      I recall talking to Andrea the day of, maybe a few days prior, like one or two days prior.  I don't recall having much conversation with Kathy about it, any conversation with Kathy about it.
> Q.      Do you remember what you talked to Andrea about?
> A.      It probably was just regarding what to expect at the termination meeting and how the meeting would go, the structure of the meeting.

ECF No. 16 at PageID #: 459:18 - 460:7.

(5:24CV1866)

Very shortly before Plaintiff could return the completed FMLA paperwork, Defendant terminated her employment at an in-person meeting on March 1, 2024.  Plaintiff, Kathy Caric, Andrea Chisnell, and Brittany Jones were at the meeting.  *See* ECF No. 16 at PageID #: 461:21 - 462:2.  Plaintiff testified during cross-examination at her deposition:  "In the exit meeting, when Brittany said to me that if I had gotten my FMLA documents in, they wouldn't be laying me off." ECF No. 13 at PageID #: 152:6-8.  She testified later in her deposition:  "Because I was told point-blank why they terminated me.  I didn't get my FMLA documents in.  When you're told point-blank, we would not be having this conversation, which was the termination meeting, if you had gotten your FMLA documents in.  That's a very clear and very precise comment to make, and there were two witnesses." ECF No. 13 at PageID #: 214:11-18.

Plaintiff admits that she was never denied any request for time off work.  *See* ECF No. 13 at PageID #: 151:11-13 ("Q.  Did TPC ever deny any of your requests for time off?  A.  No.").  Plaintiff was 60 years old at the time Defendant terminated her employment.  *See* ECF No. 13 at PageID #: 112:25 - 113:1.   Plaintiff, the oldest full-time employee in her department, was not the shortest-tenured employee in her department, and Defendant did not terminate the employment of the shortest-tenured employee in her department.  Plaintiff's duties were absorbed by the company's remaining SSRs, Cindy Skipper (age 49), Susan Hare (age 57), and Leslie Oddo (age 57).  *See* ECF No. 12-2 at PageID #: 106, ¶ 9; Deposition of Amanda Kollman (ECF No. 14) at PageID #: 289:19-21.

Shortly before Defendant terminated her employment, Plaintiff sent an email to Jones dated March 1, 2024 requesting information on how to file a formal complaint against her manager.  *See* ECF No. 13-1 at PageID #: 261.

7

(5:24CV1866)

On September 23, 2024, Plaintiff filed a six-count Complaint (ECF No. 1-2 at PageID #: 9-17) against Defendant in the Summit County, Ohio Court of Common Pleas, being Case No. CV-2024-09-4135.  Defendant removed the case to this Court on October 25, 2024, on the basis of federal question jurisdiction conferred by 28 U.S.C. § 1331.  *See* Notice of Removal (ECF No. 1).  Count I is for disability discrimination in violation of Ohio Rev. Code § 4112.02 and the Americans with Disabilities Act ("ADA").  Count II is for willful Family and Medical Leave Act ("FMLA") interference.  Count III is for willful FMLA retaliation.  Count IV is for willful age discrimination in violation of Ohio Rev. Code § 4112.02 and the Age Discrimination in Employment Act ("ADEA").  Count V is for retaliation in violation of Ohio Rev. Code § 4112.02, the ADA, and the ADEA.  Count VI is for Defendant's negligent training, retention, and supervision of Jones.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  Fed. R. Civ. P. 56(c)(1)(A) requires a party requesting summary judgment in its favor or an opposing party "to go beyond the pleadings" and argument, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon

8

(5:24CV1866)

which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of genuine dispute. An opposing party may not simply rely on its pleadings. Rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. The existence of some mere factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of

(5:24CV1866)

material fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment.  *Id.* (citing *Anderson*, 477 U.S. at 252).

"It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment."  *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997); *see also Guarino*, 980 F.2d at 410 ("Neither the trial nor the appellate court . . . will *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party."). Fed. R. Civ. P. 56(c)(1).  "[T]he court is not required to search the record for some piece of evidence which might stave off summary judgment."  *Id.*  It is also well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

### III.  Analysis

**A.      Claims for Disability Discrimination in Violation of Ohio Rev. Code § 4112.02 and the ADA (Count I)**

Under the ADA, it is unlawful for an employer to discharge an employee because of her disability.  42 U.S.C. § 12112(a).[1]  When, as here, the plaintiff relies on circumstantial evidence

---

[1]  In deciding cases under § 4112.02, the Supreme Court of Ohio has recommended that courts look to the ADA for guidance on the interpretation of Ohio's prohibition on disability discrimination.  *See Columbus Civil Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573 (1998).

(5:24CV1866)

of discrimination, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate the employee's claim.  *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023).  Under this framework, a plaintiff can establish a prima facie case by showing that:  (1) she is disabled; (2) she is otherwise qualified for the position; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of her disability; and (5) her position remained open or she was replaced.  *Id.* at 566-67.  If the plaintiff establishes her case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination.  *Id.* at 567.  The burden then returns to the plaintiff to show that the stated reason was a pretext for discrimination.  *Id.*

Defendant does not argue that Plaintiff has not shown the second and third elements of a prima facie case.  Since this case involves a RIF,[2] Plaintiff is not required to demonstrate the fifth element, and must instead introduce direct, circumstantial, or statistical evidence indicating that she was singled out for impermissible reasons:

> The *prima facie* framework is modified if an employee is discharged due to a reduction in force.  In such a case, the plaintiff is not required to demonstrate the fifth prong of the *prima facie* framework because he is not replaced.  *See Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999).  Instead, the plaintiff must introduce "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for

---

[2]  Plaintiff declares "[t]here is nothing in the record, however, supporting that Defendant terminated eight employees as part of its supposed reduction in force."  ECF No. 18 at PageID #: 595.  That statement, however, is contradicted by the Declaration of Amanda Kollman.  *See* ECF No. 12-2 at PageID #: 105, ¶ 5 ("A total of eight roles were eliminated as part of the RIF.").

11

(5:24CV1866)

> impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990); *see also Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420-21 (6th Cir.1999).

*Arthur v. Am. Showa, Inc.*, 625 Fed.Appx. 704,707 (6th Cir. 2015).

Defendant disputes Plaintiff's prima facie case.  It argues that she was not disabled for purposes of the ADA.  The 2008 Amendments to the ADA ("the ADAAA"), which identify certain impairments that "will, in virtually all cases, result in a determination of coverage," 29 C.F.R. § 1630.2(j)(3)(ii), include cancer because it "substantially limits normal cell growth," 29 C.F.R. § 1630.2(j)(3)(iii).  A plaintiff need only show a limitation "to perform a major life activity as compared to most people in the general population.' " *Barlia v. MWI Veterinary Supply, Inc.*, 721 Fed.Appx. 439, 446 (6th Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).  As the Court of Appeals for the Third Circuit observed:

> [C]ancer can—and generally will—be a qualifying disability under the ADA. Nevertheless, "[t]he determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv).  Although the ADAAA makes the individualized assessment "particularly simple and straightforward" for diseases like cancer, 29 C.F.R. § 1630.2(j)(3)(ii), an individualized assessment must still take place.  To undertake that individualized assessment, courts have required some evidence of the plaintiff's substantial limitation—even when the limitation seems self-evident in context.

*Monce v. Marshall Cnty. Bd. of Educ.*, 307 F. Supp.3d 805, 814-15 (M.D. Tenn. April 2, 2018) (quoting *Alston v. Park Pleasant, Inc.*, 679 Fed.Appx. 169, 172 (3d Cir. 2017) (affirming grant of summary judgment wherein plaintiff failed to allege that her breast cancer diagnosis substantially limited any major life activity)); *Olds v. United Parcel Serv., Inc.*, 127 Fed.Appx. 779, 782 (6th Cir. 2005) (per curiam) (holding that a UPS driver who faced a weight restriction due to his

12

(5:24CV1866)

cancer diagnosis was not disabled within the meaning of the ADA).  To perform the individualized evaluation, courts require some evidence of the plaintiff's substantial limitation even when the limitation seems self-evident in the particular circumstances.  *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).  In *Alston*, the Third Circuit concluded that without evidence as to the limits on any major life activity, the plaintiff failed to establish an element of her prima facie case of disability discrimination.  679 Fed.Appx. at 173.

Plaintiff's Memorandum in Opposition (ECF No. 18) identifies no evidence of the type set forth in Fed. R. Civ. P. 56(c) concerning how her impairment substantially limits a major life activity.  According to Defendant, Plaintiff has not produced any medical documentation – either during her employment with Defendant or in this litigation – describing her medical condition, its duration or the effect of the condition on her life activities.  *See* Defendant's Memorandum in Support (ECF No. 12-1) at PageID #: 90.  Like the plaintiff in *Alston*, Plaintiff relies entirely on her conclusory statement that she had a cancer diagnosis, and that such a diagnosis automatically qualifies as a disability.  *See* ECF No. 18 at PageID #: 591 ("Given that Sobie had an undisputed diagnosis of breast cancer, she has satisfied the first element that she suffers from a disability.").  According to Defendant, during her employment with Defendant and throughout this litigation, Plaintiff has not described how her condition limited her life activities, nor has she even provided supporting evidence confirming her diagnosis.  Absent such evidence, Plaintiff cannot meet her burden of proof to establish she was disabled.

In addition, Defendant contends its primary decision-maker, Kathy Caric, did not know or have reason to know of Plaintiff's disability or FMLA-protected activity at the time she made the decision to eliminate Plaintiff's position.  Therefore, Plaintiff cannot establish the fourth element

(5:24CV1866)

of a prima facie case of disability discrimination.  The Sixth Circuit's "existing case law makes clear that an employee cannot be considered to have been fired 'on the basis of disability' unless the individual decision-maker who fired the individual had knowledge of that disability."  *Nilles v. Givaudan Flavors Corp.*, 521 Fed.Appx. 364, 368 (6th Cir. 2013) (collecting cases).  A decisionmaker must be aware of the "specifics of an employee's disabilities or restrictions."  *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 306 (6th Cir. 2016) (citing *Arthur*, 625 Fed.Appx. at 708)).  The burden lies with the plaintiff to show that a decisionmaker involved in her termination decision knew of her alleged disability at the time of termination.  *See id.*; *see also Land v. S. States Coop., Inc.*, 740 Fed.Appx. 845, 849 (6th Cir. 2018).  Caric learned in late January 2024 that Plaintiff had a "medical issue."  *See* ECF No. 17 at PageID #: 510:13 - 512:9. Caric, however, did not learn Plaintiff had been diagnosed with breast cancer until after the within lawsuit was filed.  *See* ECF No. 17 at PageID #: 504:22-25.  Plaintiff only disclosed her cancer diagnosis with Jones; and there is no evidence that Jones shared that knowledge with others within the company.

Next, Defendant asserts that it had a legitimate, nondiscriminatory reason for eliminating Plaintiff's position as part of an enterprise-wide RIF.  *See* ECF No. 12-2 at PageID #: 106, ¶ 10 ("The decisions regarding which positions to eliminate were based solely on legitimate business needs, including the consolidation of [Defendant]'s Northwest territory into the existing North territory, which already had sufficient sales support infrastructure.").  Caric also testified that she selected Plaintiff for termination because she supported the Northwest sales territory, which was being eliminated.  *See* ECF No. 17 at PageID #: 525:5-8.

14

(5:24CV1866)

Plaintiff asserts she could perform the essential functions of her job with a reasonable accommodation of a short time off of work due to her disability.  According to Plaintiff, Defendant refused to grant Plaintiff her requested reasonable accommodation and used it as a pretextual explanation for the termination.  Plaintiff can establish pretext, however, by showing that the proffered reasons for her termination "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Hrdlicka*, 63 F.4th at 569 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)).  These categories are non-exhaustive, and the "ultimate inquiry" is whether "the employer fire[d] the employee for the stated reason or not." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citation omitted).  Plaintiff lacks evidence for any of the three (3) theories.

Plaintiff contends Defendant singled her out for termination, and its explanation of a restructuring is a mere pretext for its disability discrimination, FMLA interference, and retaliation.  "The Sixth Circuit, however, has made clear that a plaintiff cannot demonstrate pretext merely by second-guessing a defendant's business decisions." *Snyder v. Pierre's French Ice Cream Co.*, No. 1:11 CV 2275, 2013 WL 641477, at *3 (N.D. Ohio Feb. 21, 2013) (citing *Ortega v. Cosmair, Inc.*, No. 92-3655, 1993 WL 185183, at *7 (6th Cir. May 28, 1993)).  Plaintiff also relies on the temporal proximity between Defendant learning of her disability and the termination of her employment to create an inference of discrimination, and quotes *DiCarlo v. Potter*, 358 F.3d 408,421 (6th Cir. 2004), *overruled on other grounds, Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  *See* ECF No. 18 at PageID #: 596.  A principle from Sixth Circuit precedent, however, defeats Plaintiff's reliance on temporal proximity to establish a genuine dispute about pretext:  "We have held that 'an intervening legitimate reason to take an

(5:24CV1866)

adverse employment action dispels an inference' of discrimination 'based on temporal

proximity.' " *Bergens v. Diverse Concepts, LLC*, No. 25-5169, 2026 WL 768834, at *7 (6th Cir.

March 18, 2026) (quoting *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) (citation

omitted)).

**B.      FMLA Interference Claim (Count II)**

Plaintiff advances two different arguments under the FMLA.  First, Plaintiff advances an

interference claim, under 29 U.S.C. § 2615(a)(1), which states, "[i]t shall be unlawful for any

employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right

provided under this subchapter."  To prevail on a FMLA interference claim, a plaintiff must

show that "(1) he was an eligible employee; (2) the defendant was an employer as defined under

the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the

employer notice of his intention to take leave; and (5) the employer denied the employee FMLA

benefits to which he was entitled."  *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir.

2005).  The Sixth Circuit has held that employees may satisfy the final element of the prima facie

case by showing that "the employer somehow used the leave against her and in an unlawful

manner."  *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (internal quotation

marks and citation omitted).  An employer may also require that an employee support her leave

request with medical certification.  *See Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 614

(6th Cir. 2013) (affirming summary judgment against plaintiff on an FMLA interference claim).

Plaintiff argues there is direct evidence of FMLA interference and FMLA retaliation by

Defendant because Jones told her that Defendant would not be terminating her employment if

16

(5:24CV1866)

she had already returned her FMLA documents, despite Defendant's knowledge that the FMLA

documents would imminently be completed by her oncologist.

Plaintiff cannot meet at least two of the five essential elements to prevail on a FMLA

interference claim.  First, she was not entitled to leave under the FMLA because she never

submitted a completed medical certification of her need for FMLA leave.  *See Srouder*, 725 F.3d

at 614.  Second, Defendant did not deny Plaintiff any FMLA benefits to which she was entitled.

Plaintiff admits that she was never denied any request for time off work.  *See* ECF No. 13 at

PageID #: 151:11-13 ("Q.  Did TPC ever deny any of your requests for time off?  A.  No.")

Accordingly, her FMLA interference claim fails as a matter of law.

## C.    FMLA Retaliation Claim (Count III)

In addition, Plaintiff advances a retaliation claim, under 29 U.S.C. § 2615(a)(2).  The

FMLA "prohibits an employer from discharging or discriminating against an employee for

'opposing any practice made unlawful by' the [FMLA]."  *Bryson v. Regis Corp.*, 498 F.3d 561,

570 (6th Cir. 2007) (quoting 29 U.S.C. § 2615(a)(2)).  Plaintiff argues that Jones' comments to

her in Plaintiff's termination meeting are direct evidence of FMLA retaliation.

> A plaintiff can prove his FMLA retaliation claim using either direct or indirect
> evidence.  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).
> "The direct evidence and circumstantial evidence paths are mutually exclusive; a
> plaintiff need only prove one or the other, not both."  *Kline v. Tennessee Valley
> Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997).  Direct evidence, "if believed,
> requires the conclusion that unlawful discrimination was at least a motivating
> factor in the employer's actions."  *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d
> 825, 829 (6th Cir. 2000) (internal quotation marks omitted). . . .

*Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 432 (6th Cir. 2014).  "If an

employee successfully presents direct evidence that the employer acted with discriminatory

17

(5:24CV1866)

motive, 'the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive.' " *Id.* (quoting *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002)).

Plaintiff's testimony at her deposition about Jones' comments to her in Plaintiff's termination meeting, *see* ECF No. 13 at PageID #: 152:6-8 ("In the exit meeting, when Brittany said to me that if I had gotten my FMLA documents in, they wouldn't be laying me off."), even if made, do not constitute direct evidence of FMLA retaliation. As stated by the Court of Appeals for the Sixth Circuit:

> . . . "[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998). An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave. *Id.*

*Arban v. West Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003); *see also* 29 C.F.R. 825.209(f). "Direct evidence of discrimination 'must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition.' " *Curry v. Brown*, 607 Fed.Appx. 519, 523 (6th Cir. 2015) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008) (brackets in original)). Jones' alleged statement does not present clear evidence of FMLA animus.

Moreover, Jones' alleged statement lacks any corroborating evidence. Jones and Caric and Chisnell, the two other participants in the termination meeting, deny or do not recall Jones making any such statement. *See* ECF No. 16 at PageID #: 463:11-20; ECF No. 17 at PageID #: 548:2-5; ECF No. 15 at PageID #: 399:3-6.

18

(5:24CV1866)

Alternatively, "[a]n employee can establish a prima facie case of retaliation by showing that (l) he engaged in protected activity, (2) his employer was aware of the protected activity, (3) he was subject to an adverse employment action, and (4) there was a causal nexus between the protected activity and the adverse employment action." *Id.* at 432-33 (citation omitted). Plaintiff, however, has left it to the Court to put flesh on the bones of her argument that she has sufficient evidence to establish a prima facie case of FMLA retaliation under the *McDonnell Douglas* burden-shifting framework. *See* ECF No. 18 at PageID #: 588.  It is well settled that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n,* 59 F.3d 284, 293-94 (1st Cir. 1995)).

The Sixth Circuit has consistently held that participation in a RIF is a legitimate, non-retaliatory reason for termination. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 350 (6th Cir. 1998).  Because Jones' alleged statement does not constitute direct evidence of retaliation, Plaintiff must rebut Defendant's reason for terminating her employment by showing pretext, which she has not done. *Demyanovich,* 747 F.3d at 431-32.

**D.  Claims for Age Discrimination in Violation of Ohio Rev. Code § 4112.02 and the ADEA (Count IV)**[3]

---

[3]  The ADEA and Ohio law prohibit employers from discriminating against employees because of their age with respect to terms of employment. 29 U.S.C. § 623; Ohio Rev. Code § 4112.02.  Age discrimination claims under Ohio law are analyzed using the same standards that apply to ADEA claims, so the Court examines these claims

(continued...)

(5:24CV1866)

Direct evidence "proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)), *overruled on other grounds by* " *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  The plaintiff must offer evidence that shows "both a predisposition to discriminate and that the employer acted on that predisposition." *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 530 (6th Cir. 2014).

Plaintiff argues her age, combined with her medical condition, led to her termination, and suggests that decisions based on age-related stereotypes about health can constitute direct evidence of age discrimination under the ADEA.  Adverse employment actions justified by prohibited age-based stereotypes can evidence age discrimination. *Pollitt v. Roadway Exp., Inc.*, 228 F. Supp.2d 854 (S.D. Ohio 2002).  In *Pollitt*, the plaintiff produced evidence that the defendant employer failed to reinstate him following a leave of absence because "he is an old man and he will fall apart." *Id.* at 871.  Here, Plaintiff  has identified no evidence that age was a factor in the termination decision.  Furthermore, Plaintiff cites no comments or actions by a decision-maker suggesting age bias or age-related stereotypes about health.  The other employees Defendant retained in similar positions had varying ages (49, 57, and 57 years old), and Plaintiff has not identified any significantly younger employees who received preferential treatment.  Plaintiff has failed to present direct evidence of age discrimination.  Plaintiff has also not shown that age discrimination was at least a motivating factor in the elimination of her position.  The

---

[3](...continued)
together. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

(5:24CV1866)

decision was based on legitimate business needs to reduce expenses, not Plaintiff's age or health status.  Finally, Plaintiff cannot meet her burden on pretext for the same reasons set forth above.

**E.      Claims for Retaliation in Violation of Ohio Rev. Code § 4112.02, the ADA, and the ADEA (Count V)**

The very day that Defendant terminated her employment, Plaintiff sent an email to Jones requesting information on how to file a formal complaint against her manager.  *See* ECF No. 13-1 at PageID #: 261.  Plaintiff argues Defendant retaliated against her for the March 1, 2025 email.  *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").  But "a general complaint of mistreatment in the workplace is not a protected activity when the complaint is unrelated to a statutorily protected right." *Joyce v. Cleveland Clinic Found.*, No. 1:13CV1224, 2014 WL 4852265, at *14 (N.D. Ohio Sept. 29, 2014) (Pearson, J.) (citation omitted).

Similar to *Herbert v. KC Robotics, Inc.*, No. 1:23-cv-633, 2024 WL 3925673, at *10 n. 11 (S.D. Ohio Aug. 21, 2024), *report and recommendation adopted*, No. 1:23-cv-633, 2024 WL 4278309 (S.D. Ohio Sept. 24, 2024), the Court analyzes all of Plaintiff's retaliation claims using the same framework.  *See Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 511 (6th Cir. 2016) ("Both Title VII and Ohio Rev. Code § 4112.02(I) contain a so- called opposition clause, under which employers may not retaliate against any employee that 'opposed' an unlawful practice.") (citing Ohio Rev. Code § 4112.02(I); 42 U.S.C. § 2000e-3(a)); *Penny v. United Parcel*

(5:24CV1866)

*Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) ("Retaliation claims are treated the same whether brought under the ADA or Title VII.") (citation omitted); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) ("[W]e examine Title VII, ADEA, and Ohio state-law retaliation claims under the same *McDonnell Douglas/Burdine* evidentiary framework that is used to assess claims of discrimination.") (citation omitted).

Plaintiff can identify no evidence that Defendant considered her FMLA leave or March 1, 2025 email as a negative factor against her when making the decision to terminate Plaintiff's position when the employer reduced its workforce for economic reasons. Without such evidence, Plaintiff's claims for retaliation fail as a matter of law. *See Houdeshell v. Council on Rural Serv. Programs, Inc.*, No. 3:23-cv-281, 2024 WL 4817439, at *6 (S.D. Ohio Nov. 18, 2024) ("Merely terminating an employee who had been approved for FMLA leave does not constitute FMLA interference. Even assuming there is causation due to temporal proximity, Houdeshell has not presented any evidence that Defendants used her FMLA leave as a negative factor against her.").

**F.      State-law Tort Claim for Defendant's Negligent Training, Retention, and Supervision of Jones (Count VI)**

Because exercising supplemental jurisdiction over this claim will aid the efficient disposition of the parties' dispute, and none of the exceptions apply, *see* 28 U.S.C. §§ 1367(a), (c)(1) - (4), the Court exercises jurisdiction over Plaintiff's remaining State-law claim.

To prevail on this claim, a plaintiff "must show that an accused employee be individually liable for a tort against" her before being allowed to seek "recovery against the employer." *Colston v. Cleveland Pub. Libr.*, 522 Fed.Appx. 332, 338 (6th Cir. 2013) (citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 217 (1988)).   In order to prevail on this claim against her former

22

(5:24CV1866)

employer, Plaintiff must prove tort liability.  That is, "to maintain an action against the employer, a third party must allege that one of the employees is individually liable for a tort." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 517 (6th Cir. 1999).

In defense of her claim for negligent training, retention, and supervision, Plaintiff contends that "Jones was incompetent because she denied Sobie's FMLA leave." ECF No. 18 at PageID #: 599.  This argument fails because Jones did not deny Plaintiff FMLA leave.  As mentioned above, Plaintiff admits that she was never denied any request for time off work.  *See* ECF No. 13 at PageID #: 151:11-13.  Even had Jones denied Plaintiff's FMLA leave, Plaintiff fails to articulate how such a denial would be unwarranted, given Plaintiff had not provided the required medical certification.  *See Srouder*, 725 F.3d at 614 (an employer may require that an employee support her leave request with medical certification).  Finally, for the same reasons set forth above, Plaintiff's claim fails because she suffered no harm from Jones' conduct.

## IV.  Conclusion

Viewing Plaintiff's probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court concludes that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law.  For the foregoing reasons and those that have been articulated in the memoranda of the points and authorities on which Defendant relies, Defendant TPC Wire and Cable Corp.'s Motion for Summary Judgment (ECF No. 12) is granted.  Defendant is entitled to summary judgment on all claims.  Final judgment

(5:24CV1866)

will be entered in favor of Defendant.


        IT IS SO ORDERED.


   March 27, 2026                          /s/ Benita Y. Pearson
Date                                    Benita Y. Pearson
                                        United States District Judge

24